UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-0276(1) (KMM/DLM) |
| Plaintiff, | |
| v. | ORDER AND REPORT AND RECOMMENDATION |
| Ohagi Charles Walker, | |
| Defendant. | |

On September 6, 2023, Ohagi Walker was charged by indictment with a single count of being a Felon in Possession of Ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. 11.) This matter is before the Court on Mr. Walker's Motion to Supress Evidence Obtained During an Illegal Search (Doc. 18) and Motion to Disclose and Make Informants Available (Doc. 17). The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

The Court held an evidentiary hearing on Mr. Walker's Motion to Suppress Evidence on November 21, 2023. (Docs. 30, 35.) Thomas Calhoun-Lopez, Esq., appeared on behalf of the United States of America ("the government"). Jill Brisbois, Esq., appeared on behalf of Mr. Walker, who was present at the motions hearing. The briefing on this matter concluded on January 9, 2024. For the reasons stated below, the Court recommends that Mr. Walker's Motion to Suppress Evidence be denied and his Motion to Disclose and Make Informants Available be granted in part and denied in part.

## BACKGROUND

At the motions hearing, the Court heard testimony from City of Brooklyn Park Police Detective Jackson Jindra, City of Nashville Police Officer Cooper Gauldin,[1] and Hennepin County Sheriffs Deputies Lucas Eitreim, Reed Hendrickson, and Leondo Montrell-Darrel Henry. The government offered and the Court received Government Exhibit 1, Detective Jindra's body-worn camera ("BWC") video; Government Exhibit 2, Detective Gauldin's BWC video; Government Exhibit 3, Deputy Henry's BWC video; Government Exhibit 4, Deputy Eitrem's BWC video; Government Exhibit 5, Deputy Hendrickson's BWC video; Government Exhibit 6, an evidence photograph of Mr. Walker's stopped vehicle; Government Exhibit 7, an evidence photograph of a firearm under the vehicle's driver seat; Government Exhibit 8, an evidence photograph of a firearm; Government Exhibit 9, an evidence photograph of a magazine and ammunition; and Government Exhibit 10, a property inventory receipt.

The evidence presented at the motion hearing established the following. Detective Jindra, a member of the Hennepin County Violent Offender Task Force ("VOTF"), testified that a suspected member of the Lows gang was shot and killed in the early morning hours of July 30, 2023. (Tr. at 12.[2]) Law enforcement believed a member of the Highs gang shot the individual. (*Id.*) Later that same day, the Minneapolis Police Department Gun Investigation Unit provided information to the VOTF that a Confidential Reliable

---

[1] Officer Gauldin was employed by the City of Brooklyn Center Police Department at the time law enforcement stopped Mr. Walker's vehicle.
[2] For ease of reference, the evidentiary hearing transcript (found at Doc. 35) will be cited as "Tr." followed by the page number associated with the citation.

Informant ("CRI") had provided a tip about possible retaliation by the Lows against the Highs. (*Id.* at 15.) According to Detective Jindra's testimony, the CRI "provided information that Mr. Walker had urged other members to get outside and get active" which, in the context of a homicide investigation, "was taken to mean that members of the Lows need to get outside, get on the streets . . . and retaliate." (*Id.* at 16–17.) Detective Jindra agreed during direct examination that during law enforcement intelligence briefings "Mr. Walker was indicated . . . to be a member of the Lows[.]" (*Id.* at 16.) And although Detective Jindra had never met Mr. Walker before, he testified that he knew Mr. Walker "had been to prison recently [and] Minneapolis [Police] had several cases involving [Mr. Walker] and illegal possession of firearms." (*Id.*)

On the night of July 30, 2023, Detective Jindra, as part of a VOTF focused enforcement detail, was driving in an unmarked squad car with three other officers: Detective Gauldin, and Deputies Eitrem and Hendrickson. (*Id.* at 11–12, 17–18.) Detective Jindra observed a red Chrysler 300 driving in a group of six to seven other vehicles. (*Id.* at 24–25.) According to Detective Jindra, the Chrysler fail to stop for a stop sign, had tinted windows that exceeded the permitted threshold tint, and was driving faster than the posted speed limit. (*Id.* at 28–30.) Detective Jindra activated his lights and sirens to stop the car which was driving approximately 85 to 90 miles per hour in a 55 mile per hour zone. (*Id.* at 29–30.) Detective Gauldin testified at the motions hearing that he smelled marijuana coming from the caravan of vehicles that included Mr. Walker's car. (*Id.* at 71.) Detective Jindra testified that he smelled marijuana coming directly from Mr. Walker's car. (*Id.* at 26, 28, 32.)

3

About 20 seconds after Detective Jindra activated his lights and sirens, the red Chrysler came to a stop. (Gov't Ex. 1 at 1:24–42.[3]) Detective Jindra approached the driver's window while other law enforcement officers surrounded the vehicle. (*Id.* at 31; Gov't Ex. 1 at 1:55.) Mr. Walker, who was driving, rolled his window down as Detective Jindra had ordered. (Gov't Ex. 1 at 1:58–2:20.) Detective Jindra asked Mr. Walker if he had any weapons and Mr. Walker replied that he did not. (*Id.*)

Detective Jindra and the other law enforcement officers ordered Mr. Walker and his passengers to exit the vehicle. (Tr. at 32–33; Gov't Ex. 1 at 2:34.) Detective Jindra pat searched Mr. Walker, emptying Mr. Walker's pockets and opening his wallet. (Gov't Ex. 1 at 2:45–3:20.) Detective Jindra found no weapons or contraband. (*Id.*; Tr. at 33, 52.) Detective Gauldin then pat searched the front-seat passenger and found no weapons or contraband. (Gov't Ex. 2 at 2:35–3:00.) While Mr. Walker and his passengers were standing outside the vehicle, Detective Gauldin walked back to the driver's door, which had been left open when Mr. Walker exited the vehicle. (*Id.* at 3:00–10.) Standing outside the vehicle, Detective Gauldin used his flashlight to see inside the driver's compartment. (*Id.*; Tr. at 72–73.) Detective Gauldin peered below the driver's seat and saw a firearm. (Gov't Ex. 2 at 3:00–10; Gov't Ex. 6; Gov't Ex. 7.) He then alerted the other law enforcement officers about the firearm and told them to arrest Mr. Walker and his two passengers. (Tr. 33–34, 73; Gov't Ex. 2 at 3:09–16.)

---

[3] The time reflects the run time of the video as seen in the bottom left corner of the screen.

Once Mr. Walker and the other occupants were arrested, law enforcement officers searched the entire vehicle. No marijuana or drug paraphernalia was located on Mr. Walker, on any of the car's other occupants, or in the vehicle. (Tr. at 57–58.)

## ANALYSIS

**I.    Mr. Walker's Motion to Suppress Evidence should be denied because law enforcement lawfully observed the firearm in his vehicle.**

Mr. Walker asserts that the warrantless search of his vehicle cannot be sustained under any exception to the Fourth Amendment's warrant requirement. He argues that the automobile exception is inapplicable because (1) no contraband was visible in plain view of law enforcement; and (2) any suggestion that there was probable cause to believe his vehicle contained drugs or drug paraphernalia would have to be based on Detective Jindra's testimony, which was not credible. For its part, the government contends that law enforcement lawfully stopped Mr. Walker's vehicle based on observed traffic violations and were permitted to remove Mr. Walker and his passengers from the vehicle without violating the Fourth Amendment. Ultimately, according to the government, law enforcement seized evidence from Mr. Walker's vehicle under the plain view exception to the warrant requirement when Detective Gauldin, from outside the vehicle, observed a firearm under Mr. Walker's seat.

**A.    Law enforcement had probable cause to stop Mr. Walker's vehicle based on traffic violations the officers observed.**

The Court begins its analysis with the traffic stop of Mr. Walker's vehicle. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const.

5

amend. IV. A traffic stop is a seizure under the Fourth Amendment. *United States v. Hanel*, 993 F.3d 540, 543 (8th Cir. 2021). In general, law enforcement must have probable cause to believe a traffic violation has occurred to reasonably stop a vehicle. *United States v. Galtney*, No. 19-cv-0332 (MJD/BRT), 2022 WL 16701377, at * 2, (D. Minn. Aug. 29, 2022), *R. & R. adopted*, 2022 WL 1654946 (D. Minn. Oct. 31, 2022). Even a minor traffic infraction may provide probable cause to justify a stop. *Galtney*, 2022 WL 16701377, at * 2.

Detective Jindra testified during the motions hearing that he observed Mr. Walker's vehicle fail to stop a stop sign and drive faster than the posted speed limit. (Tr. at 25, 29.) Nothing in the record contradicts Detective Jindra's testimony on this point, which Mr. Walker concedes. (Doc. 37 at 1.) The Court therefore finds that these observed traffic violations established probable cause for law enforcement to stop Mr. Walker's vehicle.

**B.    Once Mr. Walker's vehicle was stopped, its occupants were lawfully ordered out of the vehicle.**

Having found that law enforcement lawfully stopped Mr. Walker's vehicle based on observed traffic violations, the Court now examines whether officers were permitted to remove Mr. Walker from his vehicle. Mr. Walker argues that law enforcement officers did not have a lawful basis to justify his removal from his vehicle. According to Mr. Walker, because he was stopped for traffic violations, he should have been permitted to stay in his vehicle while law enforcement conducted routine license, registration, and insurance checks, received any resulting traffic citation, and allowed to leave.

A traffic stop justified by only a police-observed traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a warning ticket" for the violation. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015) (cleaned up). "During a lawful traffic stop, an officer may order the occupants to leave their car as a matter of course." *United States v. Gonzalez-Carmona*, 35 F.4th 636, 641 (8th Cir. 2022) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109–11 (1977) (per curiam)); *see also Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (extending *Mimms* to passengers)). Moreover, "an individualized finding of officer safety concerns is not required." *Gonzalez-Carmona*, 35 F.4th at 641 (citing *Mimms*, 434 U.S. at 110–11).

Mr. Walker argues that law enforcement lacked authority to remove him from his vehicle. This conclusion is not supported by the law of the Circuit. After Detective Jindra lawfully stopped Mr. Walker's vehicle, law enforcement officers approached his vehicle and removed Mr. Walker and his passengers. Although Mr. Walker asserts that law enforcement's actions cannot be justified by any individualized concern for officer safety, such a justification is not typically required.[4] *Id.* There was no constitutional infirmity in law enforcement removing Mr. Walker from his vehicle during the traffic stop.

**C.  Law enforcement was permitted to return to Mr. Walker's vehicle after all the occupants were removed.**

Mr. Walker argues that law enforcement officers had no reason to approach his vehicle once all the occupants were removed. However, "[o]nce an officer has lawfully

---

[4] Even if the government were required to demonstrate an individualized concern for officer safety, it could likely do so given the information suggesting Mr. Walker was in the midst of a retaliation mission against a rival gang. (Tr. 12-25.)

7

stopped a vehicle he can approach it even if all the occupants have been removed." *United States v. Desjarlais*, No. 20-cr-0040 (MJD/LIB), 2020 WL 5996449, at *7 (D. Minn. Sept. 2, 2020) (quoting *United States v. Vinson*, 805 F.3d 1150, 1152 (8th Cir. 2015)) (cleaned up), *R. & R. adopted*, 2020 WL 13112147 (D. Minn. Oct. 7, 2020). "Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle." *United States v. Bynum,* 508 F.3d 1134, 1137 (8th Cir. 2007) (citing *United States v. Beatty*, 170 F.3d 811, 814 (8th Cir. 1999)).

Detective Gauldin approached Mr. Walker's unoccupied vehicle as it was parked on a public road and its doors were open. Because law enforcement lawfully stopped Mr. Walker's vehicle, Detective Gauldin was permitted to approach the vehicle even though Mr. Walker and his passengers had already been removed. Contrary to Mr. Walker's contention, law enforcement was neither required to establish probable cause nor reasonable suspicion to approach Mr. Walker's vehicle, stand outside the open driver's door, and look inside. Thus, the Court finds that law enforcement was permitted to approach Mr. Walker's vehicle and look through the open door even though the occupants had been removed.

**D.    Detective Gauldin lawfully seized evidence from Mr. Walker's vehicle under the plain view exception to the warrant requirement.**

Finally, the Court examines the plain view exception to the warrant requirement as applied here. Mr. Walker argues that law enforcement did not have "legal authority to search the vehicle at the time [Detective] Gauldin searched Mr. Walker's car because he

8

was illegally seized, and [law enforcement] did not have independent probable cause to search the vehicle." (Doc. 37 at 21.) The government states that the plain view exception applies because "[o]nce the occupants of the stop were out of the vehicle, Detective Gauldin saw the firearm in plain view as he stood outside the vehicle." (Doc. 36 at 10.)

The plain view exception to the warrant requirement applies when "(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right of access to the object itself." *Vinson*, 805 F.3d at 1152 (citing *United States v. Collins*, 321 F.3d 691, 694 (8th Cir. 2003)). Considering these factors and after careful review of the video evidence, the Court concludes that the plain view exception to the warrant requirement applies to the firearm seized from Mr. Walker's vehicle.

As discussed above, law enforcement did not violate the Fourth Amendment "in arriving at the place from which the evidence could be plainly viewed," and had a "lawful right of access" to the firearm. *Id.* When Detective Gauldin looked inside Mr. Walker's vehicle, law enforcement had lawfully stopped the vehicle on a public road. The driver's door remained open after law enforcement lawfully removed Mr. Walker and the other occupants from the vehicle. Detective Gauldin neither physically placed himself or his flashlight inside the vehicle, nor did he pull the door open further to get a better view. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995) (noting "if an object is in plain view" an officer's use of a flashlight "to see inside [a vehicle] . . . does not matter"). Although Mr. Walker asserts that Detective Gauldin's "head pierced the interior of the car"

9

(Doc. 37 at 3), the video evidence does not support this assertion. And, consistent with the video evidence, Detective Gauldin testified that he remained "outside the vehicle" when he saw the firearm. (Tr. at 79.) Finally, "the [firearm's] incriminating character [was] immediately apparent" to law enforcement, *Vinson*, 805 F.3d at 1152, since law enforcement knew that "Minneapolis [Police] had several cases involving [Mr. Walker] and illegal possession of firearms." (Tr. at 16.) Given Mr. Walker's criminal history, it was reasonable for law enforcement to assume that he could not possess *this* firearm. Officers lawfully searched Mr. Walker's vehicle without a warrant once they observed a firearm in plain view. Thus, the Court recommends that Mr. Walker's Motion to Suppress Evidence be denied.[5]

## II. Mr. Walker's Motion to Disclose and Make Available Informants is granted in part and denied in part.

The Court now turns to Mr. Walker's Motion for Disclosure of and to Make Available Informants. Mr. Walker seeks an Order for the government to "disclose the identity of the informant," provide an "opportunity to interview him/her," and "disclos[e] . . . his/her past criminal record or other reasons for informing in the instant matter." (Doc. 38 at 5.) The government opposes Mr. Walker's motion, asserting that the government does not plan to call the informant as a witness at trial, and arguing that the informant is a "mere

---

[5] Because the Court finds that law enforcement was justified in searching Mr. Walker's vehicle based on the presence of a firearm, it need not reach the question of whether probable cause would justify the search of the vehicle for marijuana. Nonetheless, the Court notes that Detective Jindra's suggestion that he smelled marijuana coming from Mr. Walker's vehicle was not supported by other witnesses, nor borne out by law enforcement's search of the vehicle and its passengers.

10

tipster" so pretrial disclosure is not required. (Doc. 25 at 1–2.) According to the government, the informant only "provided information that caused law enforcement officers to take an interest in [Mr.] Walker," and "has no part in the substantive case." (*Id.* at 3.)

The government's general "privilege to withhold the disclosure of the identity of a confidential informant" is not absolute. *Carpenter v. Lock*, 257 F.3d 775, 779 (8th Cir. 2001) (citing *Rovario v. United States*, 353 U.S. 53, 77 (1957)). When deciding whether to disclose an informant's information, courts must weigh "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Rovario*, 353 U.S. at 62. "[W]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id*. at 60–61 (footnote omitted). In general, "[w]here the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995) (footnote omitted) (citing *United States v. Barnes*, 486 F.2d 776, 778–79 (8th Cir. 1973); *United States v. Roberts*, 388 F.2d 646, 650 (2d Cir. 1968); *Gilmore v. United States*, 256 F.2d 565, 567 (5th Cir. 1958)). But in "cases involving 'tipsters' who merely convey information to the government, but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required." *United States v. Harrington*, 951 F.2d 876, 878 (8th Cir. 1991) (citing *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987)).

Mr. Walker is charged with being a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Doc. 11.) According to Mr. Walker,

> the information from the informant formed the basis for the officers choosing to arrest Mr. Walker compared to the other two occupants. In the event of a trial, it will also be the center of the Government's case when it tries to prove possession when faced with the finger being pointed at the passengers. Without the background information and opportunity to interview the informant, Mr. Walker is left powerless to challenge the allegations.

(Doc. 38 at 3.) Without more, the Court considers this case closer to one involving a tipster "merely conveying information," *Harrington*, 951 F.2d at 878, rather than one involving an informant "who is an active participant or witness to the offense charged," *Norris*, 53 F.3d at 206. Thus, the Court declines to order disclosures about the informant's identity or the opportunity to interview him/her. However, the Court grants Mr. Walker's motion to the extent that it will order the parties to meet and confer regarding the nature of the information provided to law enforcement; if such information reveals that the informant was something more than a tipster, Mr. Walker is free to renew his motion.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Mr. Walker's Motion to Suppress Evidence During Illegal Search (Doc. 18) be **DENIED**.

## ORDER

Accordingly, based on all the files, records, and proceedings above, **IT IS ORDERED** that:

12

1. Mr. Walker's Motion to Disclose and Make Informants Available (Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

Date: February 8, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).